JAMES D. POWELL

V.

SEARS, ROEBUCK & COMPANY AND ROPER CORPORATION

Record No. 830236

SEARS, ROEBUCK & COMPANY AND ROPER CORPORATION

V.

JAMES D. POWELL

Record No. 830254

June 13, 1986

Present: Carrico, C.J., Cochran, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice.

*William O. Snead, III (James C. Allred; Cremins, Snead & Annunziata; Hall, Surovell, Jackson & Colton, P.C.*, on brief), for appellant (Record No. 830236).

*Archibald Wallace, III (William N. Watkins; Sands, Anderson, Marks & Miller*, on brief), for appellees (Record No. 830236).

*Archibald Wallace, III (William N. Watkins; Sands, Anderson, Marks & Miller*, on brief), for appellants (Record No. 830254).

*William O. Snead, III (James C. Allred; Cremins, Snead & Annunziata; Hall, Surovell, Jackson & Colten, P.C.*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

James D. Powell was injured when a gasoline-powered chain saw, manufactured by Roper Corporation (Roper) and sold by Sears, Roebuck and Company (Sears), "kicked-back" while in use and struck Powell in the face. Powell sued for $85,000 in compensatory damages and $100,000 in punitive damages.

During trial, while still in plaintiff's case, Powell moved to amend his pleadings to increase the amount of his compensatory damage claim from $85,000 to $185,000, leaving the punitive damage claim at $100,000. The motion to amend was denied. After the parties had rested, Powell's claim for punitive damages

was stricken. Thus, the case was submitted to the jury with the original $85,000 *ad damnum* unchanged; however, the jury was never advised that Powell had sued for that amount.

The jury returned a verdict in favor of Powell in the amount of $250,000. Sears and Roper moved to set the verdict aside as excessive. Powell made two motions, first to amend his *ad damnum* to conform to the $250,000 verdict and second to reconsider the previous denial of his motion to amend his *ad damnum* to $185,000.

The trial court set aside the $250,000 verdict as excessive; reconsidered its earlier denial of Powell's motion to amend and granted leave to Powell to amend his *ad damnum* to $185,000; and put Powell on terms to accept a $100,000 judgment or retry the case. All parties appealed.

In his appeal, Powell contends the trial court erred in denying his motion to increase his *ad damnum* to conform to the verdict and in putting him on terms of remittitur. In their appeal, Sears and Roper contend the trial court erred in allowing Powell to recover more than claimed in his *ad damnum*, in placing Powell on terms of remittitur rather than granting a new trial, and in granting Powell leave to make a post-verdict amendment of his *ad damnum*. In addition, in Sears and Roper's appeal, Powell assigns cross-error to the trial court's striking Powell's punitive damage claim.

Focusing upon the issues in their logical sequence, we first consider the disposition of Powell's motions to amend his pleadings to increase his *ad damnum*. The first motion to amend was made in the midst of plaintiff's case. That motion was denied; but no error was assigned to the denial of that motion.

The second motion to amend was made after the jury had returned its verdict. The purpose of that motion was to reform the pleadings so that the *ad damnum* would match the jury verdict. The third motion was for the trial court to reconsider its denial, during trial, of Powell's original motion to amend. The motion to reconsider was granted. The effect of granting that motion was to allow a post-verdict increase in Powell's *ad damnum*.

In *Whitley* v. *Booker Brick Co.*, 113 Va. 434, 437, 74 S.E. 160, 162 (1912), this Court stated that " 'it is in the discretion of the court, *at any time before verdict is rendered*, to allow amendments of the pleadings which will operate in favor of justice.' " (Quoting 1 C. Robinson, The Practice in the Courts of Law and

Equity in Virginia 233 (1832)) (emphasis added). We went on to explain that where pre-verdict "amendments are allowed, the rights of the opposite party can always be safeguarded by a post-ponement of the trial, or, if need be, by a continuance of the case." *Id.* at 438, 74 S.E. at 162. The two methods for safeguard-ing the other party's rights, referred to in *Whitley*, are unavailable after the jury has returned a verdict. We hold, therefore, that in a case of this kind, involving an unliquidated damage claim for per-sonal injury, post-verdict amendments increasing the *ad damnum* may not be granted.

In this case, Sears and Roper argued all along that they would be prejudiced by an increase in plaintiff's *ad damnum*. They pointed out in oral argument before this Court that at no time were facts developed at trial concerning the relationship between Sears and Roper regarding financial responsibility for any award made against the companies. Further, counsel for Sears and Roper represented to the trial court and to this Court that had the first motion to amend been granted, a continuance would have been requested.

Significantly, the trial court denied the first motion to amend on the ground that to grant it would have caused "substantial prejudice" to Sears and Roper. When the post-verdict amendment was allowed, there was no finding that Sears and Roper *would not be* prejudiced by that ruling. Indeed, it is obvious to us that if defendants would have been prejudiced had the amendment been granted during plaintiff's case, even though at that time a post-ponement or continuance would have been possible, then a post-verdict amendment would also be prejudicial. In *Russell Lumber Co.* v. *Thompson*, 137 Va. 386, 119 S.E. 117 (1923), the trial court twice, during trial, rejected plaintiffs' motions to amend its pleadings. However, after the evidence was closed, but prior to the verdict, the trial court granted the amendment. At the same time, the court denied the defendants' motion for continuance, a motion based on surprise. On appeal, we reversed. We wrote as follows:

We conclude that the court in permitting the amendment at that stage of the trial, after the testimony had closed, with-out either granting the defendants' motion for a continuance on the ground of surprise, or affording an opportunity to try the new issue which this amendment tendered, erred to the prejudice of the defendants. . . . *It is fundamental that the*

> *judge, the jury and the litigants should understand the issues being tried before the testimony is concluded.*

*Id.* at 393-94, 119 S.E. at 120 (citations omitted) (emphasis added). Though *Russell Lumber Co.* involved a pre-verdict amendment, what we said there applies with greater force to post-verdict amendments of the pleadings. As noted above, after the verdict is in, the case cannot be postponed or continued, nor does any other effective method exist to counter the impact of the amendment.

Powell's arguments in support of post-verdict amendments are unconvincing. He argues that the *ad damnum* clause is essentially meaningless and does nothing more than inform the defendant of the amount of damages demanded. Powell points out further that the *ad damnum* is not evidence. Though this last statement is correct, the fact that the amount of plaintiff's claim is not evidence does not mean that it is meaningless. One obvious use of the *ad damnum* is to put on notice those who may be responsible for paying a judgment that exposure may exist. For example, the decisions made by an insurer with respect to handling a case may vary depending on whether the amount claimed falls within the deductible of a policy, falls within the policy limits, or exceeds the policy limits. Thus, the *ad damnum* serves a useful purpose.

Next, Powell argues that Rule 1:8 permits post-verdict amendments. That rule merely provides, in pertinent part, as follows: "Leave to amend shall be liberally granted in furtherance of the ends of justice." Rule 1:8 does not state that it applies to post-verdict motions. Thus, in our view, it does not conflict with *Whitley.* In short, Rule 1:8 simply does not bear upon post-verdict amendments such as that granted in this case.

Finally, Powell argues that he was entitled to increase his *ad damnum* to $185,000 because that amendment was based on new evidence developed at trial which was introduced without objection by Sears and Roper. According to Powell, when his physician testified for the first time at trial that Powell might require further surgery to remove a flap of skin inside his mouth and that without the surgery cancer might develop because Powell smoked, that evidence warranted an increase in the *ad damnum.* Powell argues further that Sears and Roper should have objected to the doctor's testimony and having failed to do so cannot object to the increase in the *ad damnum* based on that evidence.

The trial court considered this argument and rejected it on the ground that the prayer for relief already demanded recovery for future medical expenses. The trial court was of the view that the doctor's testimony merely provided evidence in support of a claim that had already been asserted and therefore was not "new" in the sense that it was not already contemplated by the plaintiff. The trial court pointed out that the doctor's testimony could have been known by plaintiff prior to trial. The trial court said further that the proper focus was on whether defendants would be harmed by the increase in the *ad damnum*; the trial court concluded that there would be harm and denied the motion.

The essence of Powell's last argument is that his first motion to amend should have been granted at the time it was made. Yet, as we have noted, Powell did not assign error to that ruling. Consequently, we must reject this argument.

■ With regard to the first issue, we conclude that the trial court properly denied Powell's post-verdict motion to amend his pleadings to conform to the $250,000 verdict and improperly granted, upon reconsideration after the verdict, Powell's motion to amend his *ad damnum* to $185,000.

■ The second major issue proceeds from the premise that when the case was submitted to the jury the amount of the *ad damnum* was $85,000. The question is whether a jury can properly return a verdict in excess of the amount sued for. The answer is no. In Virginia, a plaintiff cannot recover more than he sues for though he can recover less. *Hook* v. *Turnbull*, 10 Va. (6 Call) 85 (1806); *See Georgia Home Ins. Co.* v. *Goode*, 95 Va. 751, 30 S.E. 366 (1898).

Powell makes two arguments concerning *Hook*. First, he submits that the rule announced in *Hook* is ancient and that there exists no compelling reason for its continued existence. We disagree. The *Hook* rule is supported by the same reasoning that weighs against the granting of post-verdict motions to amend pleadings. It would be unfair to cause a defendant and other interested parties to believe that plaintiff's claim is for a certain amount and no more only to let the jury award a greater amount. Such a procedure would disrupt the orderly conduct of trials and bring uncertainty to defendants and others who may be called upon to pay the amounts awarded against defendants.

Second, Powell argues that *Hook* is distinguishable. According to Powell, *Hook* would permit a post-verdict, prejudgment amend-

ment of the *ad damnum*. Powell goes on to say that *Hook* simply does not answer the question of what should happen where plaintiff makes a post-verdict, prejudgment motion to conform the pleadings to the verdict. We disagree with Powell's reading of *Hook*.

In *Hook*, four judges of this Court wrote separately, only one mentioned the word "judgment." Judge Roane wrote as follows: "There is no doubt, that a judgment given for more damages than are stated in the declaration . . . is erroneous. . . ." 10 Va. (6 Call) at 88. This statement may suggest that a pre-judgment amendment will cure the problem but the statements made by other judges remove any doubt in that regard. Judge Tucker wrote as follows: "[I]t is a known rule of law, that, in an action sounding merely in damages, a plaintiff cannot recover more damages than he demands, although he may less. . . ." *Id.* at 86 (citations omitted). Judge Fleming used similar language; he wrote as follows: "The plaintiff cannot recover more damages than he lays in his declaration. . . ." *Id.* at 89. Judge Lyons agreed with the others though he did not address this issue directly. We conclude that the significance of *Hook* is more general than Powell perceives: It stands for the proposition that a plaintiff cannot recover more than he sues for.

Turning now to Powell's assignment of cross-error, we find no merit to it and reject it. Powell contends that the trial court erred in striking his claim for punitive damages. He contends that there was evidence in the record that defendants knew of the hazards of the chain saw, yet consciously elected to place the product in the stream of commerce notwithstanding the existence of safety devices that would have prevented this injury. In making this assertion Powell does not cite to the appendix or even to the record. Powell has failed to persuade the Court that it was error to strike his punitive damage claim.

The final issue is the appropriate remedy. Sears and Roper ask for a new trial on all issues or in the alternative a new trial on damages only. Another remedy is obvious to the Court: limit Powell's recovery to the amount he sued for and enter judgment in his favor in the amount of $85,000. Sears and Roper do not explain why a new trial either *in toto* or limited to damages is required. They merely suggested, during oral argument, that both sides were shocked by the jury verdict and that even an award of $85,000 would be excessive.

This Court is required by Code § 8.01-681 to render final judgment upon the merits where the facts before the Court are such as to enable the Court to "attain the ends of justice." In addition, the same statute admonishes this Court not to remand for a trial *de novo* except where the ends of justice require it.

This case can and will be concluded on this appeal. We are of opinion that if a jury returned a $250,000 verdict, it would surely have returned a verdict of $85,000 had it known that was the limit. We see no need for a retrial. The judgment entered below will be affirmed in part, reversed in part, and modified to reflect a ceiling on plaintiff's recovery of $85,000. We will then enter final judgment in this Court.

*Affirmed in part,*
*reversed in part,*
*and modified.*