## CIRCUIT COURT OF THE CITY OF ROANOKE

Callahan Construction, Inc.

v.

Hardy Plumbing and
Heating Corporation

December 6, 2002

Case No. CL00-341

BY JUDGE CHARLES N. DORSEY

The issue before the Court is whether Callahan Construction, Inc., hereafter "Callahan," may amend its *ad damnum* following entry of default judgment but prior to a hearing to establish damages in an unliquidated contract action.

The facts are more thoroughly set out in the motion to amend filed by Callahan and the motion in opposition filed by Hardy Plumbing and Heating Corporation, hereafter "Hardy." Nonetheless, by way of brief factual summary, Callahan was a general contractor who built a home in 1995 for private owners. Hardy was a sub-contractor of Callahan who did the plumbing and the mechanical work on that home. After the owners of the house took occupancy, alleged defects within the house allowed water to intrude under the house and cause damage. Callahan had to repair such damage which Callahan alleges was caused by Hardy's crushing a drain tile at the house during the repair of a buried utility line. Callahan filed suit seeking $100,000.00 in compensatory damages.

Callahan filed its original complaint on April 5, 2000. Hardy failed to file a timely answer to the complaint. Default judgment on liability in favor of Callahan was entered on July 15, 2000. Hardy subsequently filed a motion to set aside the default judgment. Callahan filed a praecipe on October 17, 2000, certifying that this case was "matured for trial on its merits" and that all

discovery had been completed. After a hearing on October 26, 2000, when the evidence of Hardy pertaining to delay in filing any responsive pleadings was presented, the Court reinstated its default judgment in favor of Callahan. On September 1, 2002, Callahan then filed the present motion to increase its *ad damnum* to $250,000.00. No hearing on damages has ever been set. Callahan alleges, as more fully set out in its motion, that this increase is necessary to compensate for newly discovered damages which "there was no way" for Callahan to have known of when the initial repairs were undertaken.

It is clearly the general rule in Virginia that whether to permit amendments of pleadings is within the sound discretion of the trial court. It is further clear that, in deciding whether to grant a motion to amend an *ad damnum* clause, the trial court "must consider whether the defendant will be prejudiced and whether such prejudice will affect the defendant's ability to have a fair trial. The circuit court must also consider the plaintiff's right to be compensated fully for any damages caused by the defendant's acts or omissions." *Peterson v. Castano*, 260 Va. 299 (2000).

The general principle articulated in *Peterson* must be juxtaposed with a more specific principle articulated in *Powell v. Sears Roebuck & Co.*, 231 Va. 464 (1986). In *Powell*, the Supreme Court of Virginia refined the trial court's discretion to permit amendment of pleadings to "any time before the verdict is rendered." The *Powell* court cited the 1912 case of *Whitley v. Booker Brick Co.*, 113 Va. 434 (1912), and the 1806 case of *Hook v. Turnbull*, 10 Va. (6 Call) 85 (1806), as having established the foundational precept that post verdict increases in the *ad damnum* are not permitted. The *Powell* court stated, without equivocation, that in a case "involving an unliquidated damage claim for personal injury, post verdict amendments increasing the *ad damnum* may not be granted."

In the instant case, this is a default judgment rather than verdict. Nonetheless, the reasoning of the *Powell* court prevails. The *Powell* court, citing *Whitley*, explained that the rights of the opposing party can be safeguarded in a situation where amendments are made preverdict by a postponement of the trial or a continuance of the case. In the present case, it is urged that, if necessary, the default judgment could be set aside, the plaintiff permitted to increase its *ad damnum*, and all rights of the opposing party will be protected. However, that approach could similarly be used after verdict. The verdict could be set aside, permit the plaintiff to increase its *ad damnum*, and then proceed again to re-trial. That procedure is unnecessarily complex, wasteful of the resources of the judicial system, and contrary to long established Virginia procedure.

716

Consequently, I find that default judgment, for the purposes of this analysis, is equivalent to a verdict, and in this case involving unliquidated damages in a contract case, I do not believe a post default judgment amendment increasing the *ad damnum* may be granted.