B.L. Conway, II, Conway & Conway, LLC, Abingdon, VA, for plaintiff.

Daniel Hill Caldwell, Penn, Stuart & Eskridge, Abingdon, VA, for defendant.

**Deanna Gail TILLER, Plaintiff,**

v.

**HOBART CORPORATION, Defendant.**

**No. 1:99CV00065.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Aug. 2, 1999.

## OPINION AND ORDER

JONES, District Judge.

The question before the court is whether the plaintiff in this diversity product liability case has made sufficiently detailed allegations in her initial pleading in order to properly assert a claim for punitive damages or whether, on the other hand, the allegations are improperly vague and conclusory. In light of the purposes of federal pleading, I find that the claim is sufficiently alleged and deny a motion to dismiss under rule 12(b)(6).

### I

The plaintiff Deanna Gail Tiller alleged in her suit papers that on March 11, 1997, while working at her job at a supermarket, her hand was caught in a meat grinder manufactured by the defendant, Hobart Corporation, and she was seriously in-

jured. In separate counts, the plaintiff contends that Hobart negligently designed the machine so that it was likely to injure an operator and negligently failed to warn and/or provide appropriate instructions for safe use to operators (count one); negligently failed to provide adequate guards, warnings safety equipment, and/or safety devices appropriate to protect users (count two); misrepresented to the public and to the plaintiff that the machine was safe and suitable for the use which was being made of it at the time of the accident (count three); expressly and impliedly warranted that the machine was safe, merchantable and fit for its intended purpose and breached such warranties (count four); marketed, sold, and distributed the machine in a defective condition, knowing that persons such as the plaintiff would be placed in a position of unreasonable danger by the operation and use of the machine (count five); and negligently serviced and maintained the machine (count six).

In addition, in a final count the plaintiff alleged that Hobart did all of the acts previously set forth intentionally, which "constitut[ed] a willful, wanton, and conscious disregard of the rights of the others, as well as malicious conduct." (Mot. for J. at count 7.)

The defendant removed the action from the Circuit Court of Buchanan County, Virginia, pursuant to this court's diversity jurisdiction and in addition to an answer, moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that the allegations of the suit papers, even if true, "do not factually support an award of punitive damages under Virginia law." (Mot. to Dismiss, May 4, 1999.)

The motion to dismiss has now been briefed and argued by the parties. This opinion memorializes the court's oral ruling.

## II

The accident which is the subject of this case happened in Virginia, and the parties agree that Virginia law governs the substantive aspects of the plaintiff's claim. The defendant does not dispute the theoretical availability of punitive damages under Virginia law in a case such as this, assuming that there was sufficient proof of wilful or wanton disregard of the rights of others or other malicious conduct. Rather, the defendant contends that the plaintiff has inadequately pleaded any facts which would show that she has a claim for punitive damages.

This issue, being one of procedure only, is governed by federal law under *Erie R. Co. v. Tompkins.*[1] Accordingly, cases decided by Virginia courts under Virginia's pleading rules are of limited value. The question must be decided with reference to the federal civil rules and their interpretation by the case law.

Rule 8 of the federal rules sets forth the general obligation with respect to pleading a cause of action in the federal courts: the pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] Nowhere in the rules is a requirement that "facts" be pleaded. Rule 9 does set forth the requirements for pleading "special matters" and for instance, requires that "fraud or mistake" be "stated with particularity."[3] However, "malice, intent, knowledge, and other condition of mind of a person may be averred generally."[4]

The omission of fact pleading in the federal rules by its authors was intentional, to the end of instituting so-called "notice" pleading.[5] As stated by the Supreme

---

**1.** 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Johnson v. Hugo's Skateway,* 974 F.2d 1408, 1416 (4th Cir.1992).

**2.** Fed.R.Civ.P. 8(a)(2).

**3.** Fed.R.Civ.P. 9(b).

**4.** *Id.*

**5.** For the history of the pleading theory of the federal rules, see Richard L. Marcus, *The Puzzling Persistence of Pleading Practice,* 76 Tex. L.Rev. 1749, 1752–53 (1998), and Richard L. Marcus, *The Revival of Fact Pleading Under*

Court in *Conley v. Gibson,*[6] in which this theory of pleading is given its most sympathetic exposition, "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."[7] This means that dismissal is limited to "the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief."[8]

That is not to say that exceptions to this liberal pleading regime have not appeared, particularly in response to the explosion of certain types of litigation and the perceived abuse of pleading by some litigants. A heightened pleading standard is now applied, for instance, in certain types of cases where the defendant is likely to be immune from suit.[9] As previously noted, the rules themselves recognize the danger of abuse in the pleading of fraud and mistake and expressly require more than notice pleading in those cases.[10]

The defendant here contends that a claim of punitive damages is similarly subject to being inserted in a lawsuit without any factual basis, to the unfair prejudice of the opposing party. However, I believe that there are adequate procedures available to make sure that unsupported claims for punitive damages are weeded out without undue difficulty or expense.

In the first place, the federal summary judgment procedure allows such claims to be disposed of if they are not supported in fact. A "principal purpose[ ] of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...."[11] The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[12]

Moreover, where the moving party does not have the burden of proof at trial, it need only point out to the court that there is "an absence of evidence to support the nonmoving party's case."[13] The burden then is on the nonmovant to show "there is a genuine issue for trial."[14] The nonmoving party may not then rest upon her pleadings, but must present factual evidence through affidavits or the like.[15] If the plaintiff here cannot present evidence of genuine issues of material fact as to her punitive damage claim in response to a future motion for summary judgment by the defendant, her claim must be dismissed.

Of course, summary judgment is not normally appropriate until there has been an adequate opportunity for discovery.[16] While it is possible that the presence of a claim for punitive damages might impose additional discovery burdens on the defendant beyond those otherwise present in the case, it is doubtful that any such additional discovery would be significant. Theoretically, a claim for punitive damages makes the defendant's financial situation

*the Federal Rules of Civil Procedure,* 86 Colum. L.Rev. 433, 439–41 (1986).

6. 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

7. *Id.* at 45–46, 78 S.Ct. 99.

8. Charles Alan Wright, *Law of Federal Courts* § 68 (1994).

9. *See, e.g., Dunbar Corp. v. Lindsey,* 905 F.2d 754, 763–64 (4th Cir.1990).

10. *See* Fed.R.Civ.P. 9(b).

11. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

12. *Id.* at 322, 106 S.Ct. 2548.

13. *Id.* at 325, 106 S.Ct. 2548.

14. Fed.R.Civ.P. 56(e).

15. *See id.*

16. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

relevant for discovery purposes, but the court has the power under the rules to limit such discovery upon application of the defendant.[17] For example, it might be appropriate to prohibit discovery as to the defendant's net worth until a decision has been rendered on a motion for summary judgment as to whether the punitive damage issue will go to trial.

Finally, the threat of sanctions available under the rules for submitting a claim without adequate inquiry is a deterrent to unsupportable punitive damage claims.[18]

Thus applying the spirit and letter of the federal rules to the plaintiff's pleading here, I find that it is adequate to withstand a motion to dismiss.

### III

For the reasons stated, it is **ORDERED** that the motion to dismiss (Doc. No. 3) is denied.

---

**17.** *See* Fed.R.Civ.P. 26(c).

**18.** *See* Fed.R.Civ.P. 11(b), (c).